Police. This is 23-1291, Interstate Medical Licensure Compact Commission v. Bowling, and this is Bolendonk, you're going first? Bolendonk. Did I say that right? Okay. You may proceed. Good morning, Your Honors, and may it please the Court. My name is Elizabeth Bolendonk, and along with my co-counsel, Ms. Ashley Stephens, I represent Ms. Wanda Boling. Ms. Stephens and I are students appearing under the Student Practice Act, supervised by our professor, Matthew Cushing, who's here at the table with us today. The parties have briefed many issues in this case, but since we only have 15 minutes for today's argument, we've chosen to focus on just two. I'll be addressing the breach of contract claim, while my co-counsel will focus on Ms. Boling's libel counterclaim. We'd like to rest on our briefs for the remainder of the issues. We'd also like to reserve two minutes for rebuttal. As to the contract claim, summary judgment should not have been awarded to the Commission for two main reasons. First, the Commission did not properly establish all of the required elements of a breach of contract claim. And second, the District Court erred by making factual findings as to the amount of damages to award to the Commission. Ms. Boling's contract with the Commission did not establish in any of its text any obligation for her to return her login information to the Commission upon her termination. And furthermore, the login information at issue protected such a minute amount of information that the Commission was not actually harmed by her retention of that information. The login information at hand here only protected three accounts, her PayPal account, her GoDaddy account, and her G Suite account. For both her PayPal account... Is the information in the G Suite, the GoDaddy, and forget the other one, is the data within those databases itself intellectual property? Your Honor, it's a little tricky here because the data that was protected by each of those three logins varies greatly. First, for her PayPal account, the information there was hardly anything. PayPal was simply used to make payments between the Commission and other parties, and the account had a balance of zero dollars in it. There's no information there that the Commission needed. There's no intellectual property. As for the GoDaddy account, the account at issue was the purchase IMLCC.net several years prior to her termination, which the Commission was not using and had no plans to use. They used IMLCC.org, and then after her termination purchased IMLCC.com. There is no business record of them hoping to use IMLCC.net. So again, no intellectual property of the Commission. But you haven't necessarily argued, have you, that the data itself that's in these databases is itself not intellectual property? You're focusing on the login and the passwords. Correct, Your Honor. The login and the passwords themselves were not intellectual property either for a couple of different reasons. First, login information is a term of the art. It needs to be given its plain meaning under cases like Anthony v. United States and Renfant v. New York Life Insurance Company that says plain meaning of words is looked to first. Intellectual property means something of a creation of the mind that falls into one of four categories. Only patents, trademarks, copyrights, and trade secrets are intellectual property. This is well established, even documented in places like Black's Law Dictionary and Webster's Dictionary. Her login information could not have been any one of these four categories, nor has login information ever been held to be one of these four. Is it sort of like, you know, sort of, in my generation, a key. You know, if I have, let's say, a proprietary recipe, Bob Bacarach's hamburgers that I do not want anyone in the world to know, and I have a little vault, and I've got a key, and I put this secret, secret, wonderful recipe in a vault and a key, the recipe itself is intellectual property, right? Correct. And the key is, in effect, like the equivalent of a login, as if I had stored that recipe on a computer. Correct. Again, because this is login information, it's a little bit tricky because it's not a tangible piece of property. It's not something that you have the key, and then you could physically give me the key. Login information, in the case at hand here, is something like a list or a sequence of numbers, letters, and characters, but login information could also be a thumbprint or a face scan, which we all now have on our phones. That's not something that could ever be transferred. But if you have that intellectual property in that vault, electronic vault, and isn't the fact that there's an equivalence between the login data, the password, and an old-fashioned key or combination, aren't you, in effect, still holding that intellectual property hostage? Because you can say, okay, I'm not giving you that key. There's nothing secret about that key, but without that key, you can't get Bob Baccarat's secret recipe. Yes, Your Honor. You're entirely right with that analogy. However, that fact doesn't apply to the case at hand here. The login information issue, like I mentioned, was only for three accounts. For two of those accounts, the PayPal and the GoDaddy accounts, there was nothing inside of those accounts that the Commission needed access to, to continue running their business. As for the third account, the G Suite account, they had access to that account all along, which was proven by them logging in and changing the password to that account on July 6, 2020, just a handful of days after her termination. They had, to continue with your analogy, a copy of that physical key the entire time and were not harmed by any of her attention. One of the main elements of breach of contract is the plaintiff here, the Commission, establishing that they were actually harmed by the defendant's actions. Here, they felt no harm. Well, your argument is that under the contract, she didn't have an obligation to turn over the login information, correct? Yes, Your Honor. But she did have an obligation to certify that she had erased confidential information, and she didn't do that. Yes, Your Honor. Why wasn't there a breach there? This turns to the exact same reason. The breach of contract claim requires both establishment of the defendant's failure to perform under the contract and an establishment of actual harm felt by the plaintiff. Here, the Commission also admitted that they had no way of knowing if she did actually erase any of the confidential information and just didn't let them know, which goes to the point that they had, they felt no actual harm. There was no, there's nothing that she had done that caused them any adverse. Are they entitled on a claim like that, however, to some kind of nominal damages because she failed to perform? All she had to do was certify that she had erased confidential information. Interstate Medical is left wondering whether there's confidential information out there that shouldn't be out there. Why isn't that enough to state a claim for breach? Your Honor, while Colorado does allow nominal damages for breach of contract claims, here that would be inappropriate for the exact same reasons we've already touched on today, that the Commission felt no harm from her retention of any of this information, nor would they. The PayPal account had nothing in it, the GoDaddy account was for a website that the Commission was not going to ever use, and the G Suite account they had access to. If they were never going to feel harm, the nominal damages wouldn't have been appropriate. Would the confidential information have been limited to those three accounts or was there something else that Ms. Bowling had done that could have involved some confidential information? Those three accounts were the only accounts that issue, Your Honor. Furthermore, the contract does not require anywhere else in it outside of the allegation of login information being intellectual property for login information to be returned. It only requires... Well, the contract says that the intellectual property is owned by the Commission, right? Yes, Your Honor. And so isn't that implicit? I mean, if this, let's say, going back to my silly analogy, if my secret recipe is Bob Bacharach's property and I put that in a contract and you get it, well, maybe the contract doesn't say that if you quit Bob Bacharach's wonderful hamburger company that you get to keep it, but if the contract says it's my property, isn't that implicit? That you have to return my property? Your Honor, the best way to explain this further is to continue using your analogy that the safe that holds your recipe was not a safe that Ms. Bowling had access to with her login information that's being discussed here today. The safes that Ms. Bowling's login information protected, or her keys that she had, those were essentially empty safes or safes that the Commission already had access to. There was no secret recipe inside one of the safes. Yeah, I want to ask you about damages, but I want to make sure, how you allocated your time with co-counsel. We were hoping to be transferring time shortly. Okay, well, just quickly go through your damages and then turn it over to your colleague. Thank you. Damages should not have been awarded to the Commission the way that they were because the District Court made factual findings as to the amount to award. They did correctly limit the amount of damages by removing many of the invoices that the Commission put forward. However, they made a blanket statement that Ms. Bowling was responsible for all of the line items on the remaining damages with the Thrive Group invoices. However, those invoices could have been for work that was completely external to her retention of login information, so a jury should have been involved in deciding how much responsibility she had in those damages. I'd like to relinquish the rest of my time to my co-counsel. Thank you. Thank you, Your Honors, and may it please the Court. Ashley Stevens for the Petitioner. As to the counterclaims, we will rest in our briefs, except for libel, where we have just one simple point to make. The District Court erred in granting summary judgment in favor of an affirmative defense, and Rule 8c is clear. Affirmative defenses must be raised in all pleadings, otherwise they are deemed waived. The Commission failed to raise its qualified privilege, thus waiving it. But here, the District Court overlooked the waiver and raised the defense sua sponte, to rely on, without proper notice, to a pro se litigant to grant summary judgment. This was an error, and as such, we respectfully request that this Court reverse and remand for in the Commission's response of pleadings, nor in its dispositive motion, do we see any mention of qualified privilege. Well, Counsel, didn't the Court also rely on substantial truth for its libel ruling? It did, Your Honor, but to that point, there is at least one statement that the District Court acknowledged was false, that the Commission made in regard to Ms. Bolling, and that's when the Commission accused her of holding hostage the tangible property of the Commission. There was simply no evidence in the record to support this assertion, and the District Court agreed. So the District Court's deciding that the Commission is entitled to affirmance on the basis of truth, Your Honor, has been disproved by this one instance right here. Is that all, though, that would be left in terms of your argument, that the rest of the claim is gone? It's just on that statement? No, Your Honor, and to be frank, the evidence on this point is going to be disputed, and as such, we believe the dispute is best resolved and remanded the trial court, but there is another instance where the Commission made statements and published these statements on its official website for the world to see that Ms. Bolling refused to acknowledge the email correspondence that contained a contract extension. This simply is not true, Your Honors. Ms. Bolling did, in fact, respond to that email, and she copied a member of the Personnel Committee requesting their input before she rendered her own decision on whether she wanted to accept the contract extension put forth by the Commission. This is in some ways an off-topic, but it's part of a liable category. Is Interstate Medical, what is the nature of this organization? Is it government? Is it quasi-government? Is it a private corporation? What is it? It functions like a governmental agency. It's a nationwide medical organization that has the same, it does function like a government agency in a sense, quasi-governmental. Can a government agency be sued for liable? Your Honor, a government agency may be sued for liable. I believe you're leading to the malice standard here. Well, no, I'm just asking if a government agency can be sued for liable. The statements made are so defamatory, as we have claimed here in this case, that they have maliciously impugned upon the professional reputation of the party at issue. And that's what happened here, Your Honors. The Commission's statements labeled... But she didn't sue any individuals. The counterclaim isn't against the directors, just against the organization. That's correct, Your Honor. It's simply against the Commission as a whole. Your Honors, in line with this Court's jurisprudence in Richardson v. Ernst Group, as well as Safeway Stores, the First, Fourth, Seventh, and D.C. circuits have all held the same thing. When a party files a motion for summary judgment, and they fail to include any applicable affirmative defenses, those defenses are waived. And a district court cannot resurrect those defenses to benefit the party that neglected to raise them in the first place. That is exactly what happened here in this case, Your Honors. And as such... Do we have any discretion to resurrect them? Well, under this Court's jurisprudence in Safeway Stores, no. As a matter of law, the district court cannot sui sponte raise a waived affirmative defense. I didn't ask about the district court. I was just wondering if we had any leeway there. But Safeway says no. Is that what you're saying? Yes. This Court in Safeway Stores clearly stated that it cannot happen. And noting that my time is quickly expiring, I'd like to briefly conclude. Okay. Thank you. Your Honors, for the reasons presented today and those presented in our briefs, we respectfully ask that this Court reverse and remand for further proceedings. And I'd like to reserve the remainder of my time for rebuttal. Let's hear from the Commission. Mr. Masters? Good morning, Your Honors. And may it please the Court, we... Please identify yourself. I am Richard Masters, and I'm the General Counsel for the Interstate Medical Licensure Compact Commission. And getting to the question, what type of entity that we are, we are a creature of statute, including all of the member states, including Colorado, which have enacted the compact legislation. And there's some 40 states that are currently members of the Compact Commission. It does define itself as an interstate agency. And we are classified under Section 115 of the Internal Revenue Code as qualifying as a governmental agency by virtue of the statutory language creating the Compact Commission. And you can be sued for libel? It's not clear to me from the research, but certainly we don't believe there was a libel claim here that was substantiated. And as was pointed out in one of the questions, the defense of truth was raised and substantial truth would apply even to the area that they are claiming goes beyond that standard. And that's the question of holding information postage, so to speak. I don't know if that specific word was used, but certainly it's still our belief that this information has never been erased. And we don't know to this day what exactly is on the computers that are still owned by them. But you don't, you haven't argued that there's any damage from the failure to certify, the failure to, from the failure to certify erasure of all confidential information? When the lawsuit began, we had expended approximately $82,000 putting in place what I believe, at the very least, would be a mitigation of damage because we couldn't do anything about getting those passwords back. Let me ask it a different way. The district court found that there was $896 that had nothing to do with this and you haven't crossed the field. We have not. Frankly, we wanted this over. I'm standing here today, I can't tell you that I necessarily agree with all of the reasoning with regard to the damages, but I will say we filed this suit to get our data back. It really wasn't about the damages. She didn't even answer the complaint. She filed five counterclaims for all sorts of tortious conduct and things that I don't believe have been substantiated either. So we don't want to extend this in any way, shape, or form and did not feel it was in our best interest to take a cross appeal. Is it fair to say that you, at least in your briefing, have not argued that there were any damages from the theory to certify that all of the confidential information had been erased? I don't think we have conceded that all of that's been erased or that there's not damage or the potential for future damage and that's what worries us. We don't know what's there and she hasn't even certified that it's been erased. So I think we've got a continuing problem with this case until and unless we get some kind of a certification and or whatever data that she might have. Do you agree that it's limited to those three accounts? Those three accounts are the ones that we wanted the passwords and the administrative rights to. It's not correct in my view to represent to you that I am an expert in technology, but we did have two expert witnesses consisting of the technology manager that replaced Ms. Bolling, as well as the executive director, actually in depositions that she took, as well as another contractor for technology that worked on these accounts, who all made comments about the standards of practice in cases where a technology contractor has been terminated and then fails to give back data that whether it's defined as intellectual property or related materials, which I think is important to note, the contract that she admitted she signed and admitted had these responsibilities, not only use the term intellectual property, but materials and any copies containing, reflecting, incorporating, or based upon the confidential information. So the court looked at that language and believed that that was certainly sufficient grounds to justify finding that there was a breach of contract. And I want to make sure I'm following you because you're talking about two different things, the failure to return the intellectual property, the passwords, and login, and then you're referring to a distinct provision involving the confidential information. So you're not talking about the passwords being part of the confidential information? Well, I think the court opinion indicates that, and I agree. I think the court was correct in stating that if you look at the language of the contract, it's broad enough to include even things that they're now saying might not technically be defined as intellectual property. And I believe that's the opinion of our expert witnesses, Mr. Dale Watts, Mr. Marshall Smith, and Mr. Dan Ropey, and those are in the record at volume two, pages 174 through 180. I guess what I'm really trying to ask you about is the contract actually refers to intellectual property and related material. Right. And I kept waiting for you in your brief to argue, well, passwords and login information may not be intellectual property, but they're certainly related material. Exactly. I never saw you argue that. Well, we thought that was implied, but I should have been more specific. I'm just telling you, I was expecting you to argue that, but I don't know that we can adjudicate an argument. Right. You know, we're not anybody's lawyer, we're just adjudicators. But then there's a separate provision about related material that's incorporated in the confidential information. Right. And that's really kind of what you have argued. So how does the passwords and login information that Ms. Bolling created, how do the passwords and login constitute material that had been incorporated into the confidential information? Well, my experts that I pointed out. How did they do it? They explained that there's a technology platform that these passwords or administrative rights are needed to get into. And we can't get into our accounts because we don't have the administrative rights for the passwords, which weren't given to us. And we have had feedback and one of our witnesses, I think Mr. Watt talks about this in his deposition that anytime they try to activate, I think it's the GoDaddy account, there's some kind of a phone number that is connected with Ms. Bolling that is contacted. And then there's apparently some need for a further verification that we can't get. So we're still troubled by the posture that we're in now. And that's one of the principal reasons we filed the suit. So just to sort of boil this down. Okay. On the confidential information. Yes. She has a certified erasure. And you have been harmed in what way from that? Where's the harm? Well, again, we don't have a complete accounting for what she has on her computers related to these accounts. But we believe that some of it may well be related to the licensure information that's processed, multi-state licenses under the compact. That's the function of what we do is to allow physicians to apply for licensure in any of the member states. And then we have data that is protected about each of those physicians. And we think some of this is implicated in the accounts that we've never been able to get information on or be informed as to what information is stored, if any, on her computers. How does the evidence support the $950 some dollars of damages awarded here? Well, there was a separate invoice that we were billed for related to attempting to reconstruct some of this information or at least determine what could be done about changing our technology platform. But the invoice doesn't really break it out, does it? I don't remember exactly how it's listed on the invoice. But the court certainly felt that it was not in the same category as those other damages that she felt had been appropriately classified prior to the lawsuit as damages that we might not have, might have incurred no matter what. I could be wrong, but I thought Ms. Bolling had argued even when she was pro se to the district court that the PayPal account had been transferred to some other commission account before, you know, long before Ms. Bolling entered into this contract to be the super administrator and the same for both the PayPal and the G Suite account. And so she had argued to the district court that two of those three accounts really had nothing to do with her. And because that $956 was just one super invoice for all three of those accounts, there was no way to determine. And what's your response to that? Is there a flaw in that argument? Again, at least a portion of that invoice was devoted to the... The GoDaddy account. Yeah, the GoDaddy. But Ms. Bolling's argument is that could have been $1, it could have been $955. Do you think, do you have any way of knowing whether it's $1 or $956? That figure is invoiced using that amount. I know we do have a documented invoice that was part of the data that was shared with the court and... Did a witness explain the breakdown? Yes, I think Mr. Watts as well as Mr. Smith explained each one of these invoices, including the one that you're asking about. Can I come back to the libel issue? Yes. So this is the counterclaim from Ms. Bolling. You'd agree that she's not a public person defamation plaintiff, she's a private person defamation plaintiff and the statements that issue would not be issues of public concern. Would you agree with that so far? Agree that she's not a public figure? Right, she's not a public figure. I agree. Right. And so under those circumstances, is there any argument that is the way defamation law has evolved over time that one of the elements of her claim is to show falsity? Does she need to show falsity, substantial falsity? I know that truth has been an affirmative defense for a long, long, long time. Right. Some defamation plaintiffs need to prove falsity as part of their claim. Did she need to prove falsity? I don't recall that there was proof that it was false.  But does she have to under a call for a fault? I think she does. I've got several of our cases on libel. Well, we can look at that. I've got one other. This is going to be another sort of out from left field maybe. But if interstate medical is a government entity the way you started out, is it entitled to sovereign immunity? That's one of the reasons that we drafted the compact using the language that we use, indicating that... Well, did you argue that at all in this case as far as the counterclaims are concerned? I don't believe that we asserted governmental immunity, but I do believe that it attaches. And the citizenship of interstate would what, be all of its state members? Is that how it works? Because I didn't see the complaint specifically allege... The headquarters is located here in Denver and has been determined by the majority of  headquarters is authorized to be located. But is Bollings a citizen of Texas? Is that correct? I think she is a citizen of Texas. And Texas is a member, isn't it? And Texas is a member, yes. Was Texas a member when the suit was filed? No. When the counterclaim was filed? No, that's been... So there would have been complete diversity when the counterclaim was filed? Yes. Can I ask a question? Sure. Sorry. On the contract, does the meaning of what is intellectual property in terms of logging the passwords, does that depend on what the parties intended in this rather unique scenario? And if so, is the resolution ambiguous and does it turn on extrinsic evidence? Certainly, the court held that the understanding of the parties and their intentions with regard to this information were included and part of the contract. I think sometimes that's referred to as contemporaneous construction. What do the parties believe it means? But when Ms. Bollings was questioned about information such as passwords and codes and that was what the contract said and that she was subject to. Is it subject to two different plausible interpretations? I think it's clear that we wanted to protect the information. I mean, we have a duty to make sure that all this information about physician licenses is treated confidentially and I don't think she had any disagreement with that. But to me, that's the intent of the parties and that is the appropriate way to construe the agreement. Thank you. Thank you, counsel. Your time's expired. I think the appellants have a few seconds left. Thank you. Can you give her 60 seconds? Could you give 60? Thank you, your honors. I'd like to make a few quick points. First, ambiguity was never argued by the commission for the contract. That means that under Anthony v. United States, the plain meaning of the contract must govern. As to the materials point, her login information does not need to be returned to the commission because it does not fall under the category of material that the contract requires to be returned. The contract explicitly says that only materials provided for Ms. Bolling's use by the commission needed to be returned and she created all three accounts at issue. And finally, as to damages for the $956 at issue, that came from three different things. It came from launch ISAR 2, migration assistance and new domaining, and homepage mapping and creating updates. Of those three things, there is some contention as to what the commission would have needed to get done, whether or not Ms. Bolling continued to work for the commission and whether or not Ms. Bolling retained or returned any of the login information to the commission. Thank you, your honors. Thank you, counsel. You are excused. Welcome to the Tenth Circuit. The case shall be submitted.